UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BRANDON R. POWELL and SHEILA J. POWELL, | Case No. 10-CV-1984 (PJS/FLN) |
| Plaintiffs, | |
| v. | TRANSFER ORDER |
| I-FLOW CORPORATION; DJO, LLC; and DJO INCORPORATED, | |
| Defendants. | |

    Yvonne M. Flaherty, LOCKRIDGE GRINDAL NAUEN PLLP; Michael W. Young, PARSONS BEHLE & LATIMER, for plaintiffs.

    Michael C. Lindberg, JOHNSON & LINDBERG, P.A., for defendant I-Flow Corporation.

    Bradley J. Lindeman, Elizabeth Snyder Poeschl, and Jon R. Russell, MEAGHER & GEER, P.L.L.P., for defendants DJO, LLC and DJO Incorporated.

This case is one of thousands of product-liability actions filed in recent years in the District of Minnesota by plaintiffs who have no connection to Minnesota against defendants who have no connection to Minnesota regarding events that did not occur in Minnesota and that had no impact within Minnesota.[1] The vast majority of these actions have been filed in this District because, if they were filed by the plaintiffs in their home states (or almost anywhere else), they

---

[1] *See* John Share, *Minnesota Statute Attracts High Number of Personal-Injury Cases*, Minneapolis/St. Paul Bus. J., May 9, 2008, *available at* http://twincities.bizjournals.com/twincities/stories/2008/05/12/focus3.html; Scott A. Smith, *Commentary: Minnesota's Statute of Limitations: Closing the Loophole*, Minn. Law., Mar. 31, 2008; Mark Hansen, *Lawsuits Travel Up North*, A.B.A. J., Dec. 1, 2007, *available at* http://www.abajournal.com/magazine/article/lawsuits_travel_up_north/.

-1-

would be dismissed under the applicable statutes of limitations. The Minnesota Legislature has enacted unusually long statutes of limitations,[2] and, by virtue of a line of decisions of the Minnesota Supreme Court culminating in *Fleeger v. Wyeth*, 771 N.W.2d 524, 525 (Minn. 2009), those statutes of limitations apply to all actions that arose prior to August 1, 2004, and that are properly commenced in a federal or state court in Minnesota.

This case is typical. Plaintiffs Brandon R. Powell and Sheila J. Powell are citizens of North Carolina. Compl. ¶ 9 [Docket No. 1]. Defendants DJO, LLC and DJO, Inc. (collectively "DJO") and I-Flow Corporation are Delaware corporations with their principal places of business in California. Compl. ¶¶ 10-11. Brandon underwent shoulder surgery in North Carolina in 2001, and he and his wife Sheila now sue defendants for damage to Brandon's joints that allegedly resulted from the treatment of his postsurgical pain with a pain pump made by I-Flow and distributed by DJO. Compl. ¶¶ 17-22. In short, this case has no discernible connection to Minnesota.

Presumably the Powells did not file this action in North Carolina — where they live, where the pain pump was implanted, and where Brandon's injuries have been suffered — because it is too late to sue the defendants there. It is thus entirely understandable why the Powells would file suit in Minnesota. And now that the Powells have filed suit in Minnesota, the Minnesota statutes of limitations will travel with this case, even if this case is transferred to another district under 28 U.S.C. § 1404(a). *See Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990) (a § 1404(a) transfer does not change the law applicable in a diversity case); *Eggleton v.*

---

[2]*See* Minn. Stat. § 541.05 (providing a six-year limitations period for negligence and fraud claims and a four-year period for strict-liability claims); Minn. Stat. § 336.2-725 (providing a four-year limitations period for warranty claims).

-2-

*Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 586 (8th Cir. 2007) (after a § 1404(a) transfer, "the transferee court applies the choice-of-law rules of the state in which the transferor court sits").

The question before the Court is whether this case should, in fact, be transferred to another district under § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Deciding whether to order a transfer under § 1404(a) "require[s] a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). The relevant factors fall generally into three categories: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Id.* There is, however, "no exhaustive list of specific factors to consider . . . ." *Id.*

The first two factors — the convenience of the parties and the convenience of the witnesses — overwhelmingly favor transfer. Because none of the parties is located in Minnesota, none of the relevant events occurred in Minnesota, none of the alleged injuries has been suffered in Minnesota, and none of the evidence is present in Minnesota, Minnesota does not appear to be convenient for *anyone* — including the Powells, who live in North Carolina. *Any* state with *any* connection to this lawsuit would be more convenient than Minnesota.[3]

---

[3]Of course, a plaintiff can choose to inconvenience himself, and, if litigating in Minnesota were convenient for defendants and third-party witnesses, the Court would not transfer the case solely to eliminate an inconvenience that the Powells want to bear. *Cf., e.g., CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 409 (D. Minn. 2009). But for the reasons described above, litigating in Minnesota would not be

In resisting transfer, though, the Powells point to the deference that is normally afforded to a plaintiff's choice of forum. Pl. Opp. to Transfer at 7 [Docket No. 24] ("Plaintiffs have chosen to bring this action in the District of Minnesota, and the normal presumption favors the Plaintiffs' choice."). It is true that, as a general rule, courts afford some deference to a plaintiff's choice of forum; as a practical matter, this means that a defendant seeking a transfer under § 1404(a) bears the burden of showing that a transfer is warranted. *Terra Int'l*, 119 F.3d at 695. But this deference "is based on an assumption that the plaintiff's choice of forum will be a convenient one." *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010). When that assumption does not hold — when, as here, the plaintiff has chosen an inconvenient forum — the plaintiff's choice of forum fades in importance.

Indeed, the Eighth Circuit recently held in *In re Apple* that a plaintiff's choice of forum "was entitled to *minimal* weight in the § 1404(a) determination" because there was "no relevant connection" between the plaintiff's chosen forum and the dispute or any of the parties or potential witnesses. *Id.* (emphasis added). Further, "the risk that the plaintiff chose the forum to take advantage of favorable law," rather than because the forum has a connection to the dispute, counsels against deferring to the plaintiff's choice of forum. *Id.* There is no doubt that the Powells filed this action in Minnesota "to take advantage of favorable law," and not because Minnesota has any connection to this dispute. Indeed, the Powells implicitly acknowledge as much by asking the Court, if it transfers the case, to opine that the Minnesota statute of limitations will apply after the transfer. Pl. Opp. to Transfer at 17 ("Plaintiffs request that,

---

convenient for defendants or third-party witnesses.

-4-

should the Court order a transfer, the Court explicitly articulate in an order that the transfer will not displace the Minnesota statute of limitations.").

Because the Powells cannot credibly argue that Minnesota is a convenient forum, and because little or no deference is due the Powells' choice of forum under *In re Apple*, the Powells have little choice but to focus their opposition to a transfer on the interests of justice. This factor, however, also strongly favors transfer.

As described at the outset of this order, this Court has been inundated with product-liability actions that have little or no connection to Minnesota. No one can fault the plaintiffs who have brought these actions for taking advantage of the opportunity extended to them under Minnesota law. But such forum shopping nevertheless imposes heavy burdens on this Court and diverts the Court's limited resources away from litigants and cases that have much stronger connections to the District of Minnesota.

In the past, the burden imposed on this District by these out-of-state actions has been alleviated by the fact that most of them — including, most significantly, thousands of hormone-replacement-therapy cases — have been consolidated into multi-district litigation ("MDL"). *See In re Prempro Prods. Liab. Litig.*, MDL No. 1507 (JPML), No. 4:03-CV-1507-WRW (E.D. Ark.).[4] But the Powells have filed a pain-pump case, and the Judicial Panel on Multidistrict

---

[4]A vastly disproportionate number of hormone-replacement-therapy cases have been filed in the District of Minnesota. For instance, in 2009 and so far in 2010, a total of 778 cases were transferred from district courts throughout the country to the MDL proceeding in the Eastern District of Arkansas. Of those 778 cases, 585 — roughly 75 percent — were initially filed in the District of Minnesota. *See In re Prempro Prods. Liab. Litig.*, MDL No. 1507 (JPML), No. 4:03-CV-1507-WRW, Conditional Transfer Orders Nos. 154-84 (E.D. Ark. Jan. 5, 2009 – June 29, 2010). Many of these cases have minimal, if any, connection to Minnesota. *See* Scott A. Smith, *Commentary: Minnesota's Statute of Limitations: Closing the Loophole*, Minn. Law., Mar. 31, 2008 ("In the hormone replacement therapy litigation (MDL 1507) alone, more than 3,500

Litigation ("JPML") has twice declined to consolidate pain-pump cases into an MDL. *See In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, MDL No. 2139, 2010 U.S. Dist. LEXIS 38103, 2010 WL 1790214 (JPML May 5, 2010); *In re Shoulder Pain Pump-Chondrolysis Prods. Liab. Litig.*, 571 F. Supp. 2d 1367 (JPML 2008). The panel has found that the cases are too factually dissimilar to merit MDL treatment, and thus the burden of handling each of the dozens of pain-pump cases filed to date in this District will fall on the judges of this District. Further, numerous hormone-replacement-therapy cases are being returned to this District for trial after having been part of an MDL with respect to discovery and pretrial matters. *See In re Prempro Prods. Liab. Litig.*, MDL No. 1507, Cond. Remand Order (JPML Mar. 24, 2010), filed in *In re Prempro Prods. Liab. Litig.*, No. 4:03-CV-1507-WRW, Docket No. 2251 (E.D. Ark. Apr. 8, 2010) (remanding 129 cases for trial, 22 of which will return to the District of Minnesota — the largest number returning to any single district). In a number of these cases, plaintiffs who are gravely ill are seeking prompt trials — each of which is expected to last many weeks. As is true with the pain-pump cases, few of these hormone-replacement-therapy cases have any connection to Minnesota.

It is important to note that, even without the deluge of out-of-state product-liability cases, this District would be among the busiest of the 94 federal judicial districts. The Administrative Office of the United States Courts measures the workload of federal judicial districts by calculating weighted filings per judge. On that measure, this District routinely is among the five

---

plaintiffs originally commenced their claims in Minnesota; fewer than 200 of those plaintiffs are Minnesota residents.")

busiest districts in the United States. In 2009, this District "slipped" to seventh.[5] Although this District is efficient in handling its caseload, the median time from filing to trial for civil cases in 2009 was nevertheless 27 months — slower than 43 of the other 93 federal district courts. It in no way furthers the interests of justice for this District to keep numerous pain-pump cases with no connection to Minnesota and delay justice even longer for residents of Minnesota and others who seek to litigate disputes that have a genuine connection to Minnesota.

The Powells argue that keeping all of these pain-pump cases in Minnesota would further the interests of justice because the cases could be litigated more efficiently if they were all litigated in the same district. Pl. Opp. to Transfer at 4-5, 8-9. But by this logic, plaintiffs' lawyers could routinely force a "de facto" MDL on a district simply by filing enough similar cases in that district. This would allow plaintiffs' lawyers to sidestep the JPML and the MDL process — the very mechanism that federal courts have implemented for handling mass-tort actions.

Efficiency in litigation does, of course, favor the interests of justice, because efficiency frees up resources and thus speeds up the resolution of disputes. But the *judicial* efficiencies to be had in pain-pump litigation are modest, which is precisely why the JPML has twice refused to consolidate pain-pump cases into an MDL, and one of the reasons why pain-pump cases are no longer being transferred to a single judge under this District's related-cases policy. Further, over time the parties and their attorneys, many of whom are likely to be repeat players in these cases, will realize efficiencies as they litigate pain-pump cases. The efficiencies realized if these cases

---

[5]The statistics in this section were generated dynamically from the website of the federal courts at http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx.

are litigated in front of different judges in one district will differ only modestly from the efficiencies realized if these cases are litigated in front of different judges in different districts. And even if some additional judicial efficiencies might result as the judges of this District became familiar with pain-pump cases, federal district courts are not specialist courts, and the federal courts thus routinely — by design — forgo efficiencies that might result from specialization.

In opposing transfer, the Powells rely heavily on *Ivey v. McKinley Medical, L.L.C.*, No. 08-6407, slip op. (D. Minn. Dec. 14, 2009), in which a judge of this District decided not to transfer a pain-pump case. (It should be noted that, at the time, there was some hope that the pain-pump cases would be consolidated into an MDL.) For the reasons given above, the Court respectfully disagrees with *Ivey*. Moreover, even if the Court agreed with *Ivey*, the Court would find that a different outcome is required in this case because of *In re Apple*, which was decided by the Eighth Circuit four months after *Ivey* was issued.[6] *In re Apple* held that a district court abused its discretion by refusing to transfer a case that had no relation to the district in which the case was filed. 602 F.3d at 916. The Powells' lawsuit has no more relation to the District of Minnesota than the lawsuit in *In re Apple* had to the Western District of Arkansas. For the same reasons that the Eighth Circuit ordered that *In re Apple* be transferred out of the Western District of Arkansas, the Eighth Circuit might very well order that the Powells' action be transferred out of the District of Minnesota.

---

[6]The Court also notes that "section 1404(a) accords the district court much discretion in deciding" motions to transfer, and thus, even on identical facts, different courts may reasonably reach different decisions under § 1404(a). *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 697 (8th Cir. 1997).

Case 5:10-cv-00284-FL   Document 28   Filed 07/14/10   Page 8 of 9

For all of these reasons, the Court will transfer this action to the Eastern District of North Carolina, where the Powells reside. As noted, if, under Minnesota's choice-of-law rules, the Powells are entitled to the benefit of Minnesota's statute of limitations, they will retain that benefit in the Eastern District of North Carolina. *See Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990) (a § 1404(a) transfer does not change the law applicable in a diversity case); *Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 586 (8th Cir. 2007) (after a § 1404(a) transfer, "the transferee court applies the choice-of-law rules of the state in which the transferor court sits").

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT this case is TRANSFERRED to the United States District Court for the Eastern District of North Carolina.

The Clerk of Court is directed to effect the transfer.

Dated: July 14, 2010                     s/Patrick J. Schiltz
                                         Patrick J. Schiltz
                                         United States District Judge